# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission,<br><br>Plaintiff,<br><br>    v.<br><br>Ambrosia Web Design LLC, an Arizona limited liability company, also d/b/a AWD; Concord Financial Advisors LLC, an Arizona limited liability company; CAM Services Direct LLC, an Arizona limited liability company; AFB LLC, an Arizona limited liability company; Western GPS LLC, an Arizona limited liability company; Chris Ambrosia, individually and as a manager of Ambrosia Web Design LLC, AFB LLC, and CAM Services Direct LLC; and LeRoy Castine, a/k/a Lee Castine, individually and as a manager of Ambrosia Web Design LLC, Concord Financial Advisors LLC, AFB LLC, and Western GPS LLC;<br><br>Defendants. | Case No. CV 12-2248-PHX-FJM<br><br><br><br>STIPULATED FINAL ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT |

Plaintiff, the Federal Trade Commission (Commission) filed its Complaint for Permanent Injunction and Other Equitable Relief and subsequently filed its Amended Complaint for Permanent Injunction and Other Equitable Relief (Amended Complaint), for a permanent injunction and other equitable relief in this matter, under Sections 13(b) and 19 of the Federal Trade Commission Act (FTC Act), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act (Telemarketing Act), 15 U.S.C. §§ 6101-6108.  The Commission and Defendants stipulate to the entry of this Stipulated Final Order for Permanent Injunction and Monetary Judgment (Order) by this Court to resolve all matters in dispute in this action between them.

**THEREFORE, IT IS ORDERED** as follows:

## FINDINGS

1.      This Court has jurisdiction over this matter.

2.      The Amended Complaint charges that Defendants participated in deceptive and unfair acts and practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the Telemarketing Sales Rule (TSR), 16 C.F.R. Part 310, in telemarketing credit card interest rate reduction services.

3.      Defendants neither admit nor deny any of the allegations in the Amended Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.      Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.  Defendants waive and release any claims that they may have against the Commission and Receiver Thomas McNamara and their agents that relate to this action.

5.      Defendants and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For purposes of this Order, the following definitions shall apply:

1.      **"ACH debit"** means any completed or attempted debit to a person's account at a financial institution that is processed electronically through the Automated Clearing House Network.

2.      "**Card-Not-Present transaction"** means a credit, debit, prepaid, or stored value card sales transaction in which the cardholder does not swipe or otherwise physically present a credit, debit, prepaid, or stored value card as payment for goods or services.  Examples of card-not-present transactions include but are not limited to telephone, online, or other electronic commerce sales.

3.      **"Corporate Defendants"** means Ambrosia Web Design LLC, d/b/a AWD; AFB LLC; CAM Services Direct LLC; Concord Financial Advisors LLC; and Western GPS LLC; and their successors and assigns.

4.      **"Credit repair service"** means any service, in return for payment of money or other consideration, for the express or implied purpose of:

A.      improving any consumer's credit record, credit history, or credit rating; or

B.      providing advice or assistance to any consumer with regard to any activity or service the purpose of which is to improve a consumer's credit record, credit history, or credit rating.

5.      **"Debt relief product or service"** means any product, service, plan, or program represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, such as a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.

6.      **"Defendants"** means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

7.      **"Financial related product or service"** means any product or service represented, directly or by implication, to:

4

      A.     provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, credit, debit, or stored value cards;

      B.     improve, or arrange to improve, any consumer's credit record, credit history, or credit rating;

      C.     provide advice or assistance to any consumer with regard to any activity or service the purpose of which is to improve a consumer's credit record, credit history, or credit rating;

      D.     provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, a loan or other extension of credit; or

      E.     provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving any service represented, expressly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a consumer and one or more secured creditors, servicers, or debt collectors.

8.     **"Individual Defendants"** means LeRoy Castine, a/k/a Lee Castine, and Chris Ambrosia.

9.     **"Merchant"** means a person who is authorized under a written contract with an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

10.     **"Outbound telemarketing call"** means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

11.     **"Payment Processing"** means providing a Person, directly or indirectly, with the means used to charge or debit accounts through the use of any payment mechanism, including, but not limited to, Remotely Created Payment Orders, Remotely Created Checks, ACH Debits, or debit, credit, prepaid, or stored value cards.  Whether accomplished through the use of software or otherwise, Payment Processing includes, among other things:  (a) reviewing and approving merchant applications for payment processing services; (b) providing the means to transmit sales transaction data from

merchants to acquiring banks or other financial institutions; (c) clearing, settling, or distributing proceeds of sales transactions from acquiring banks or financial institutions to merchants; or (d) processing chargebacks or returned Remotely Created Payment Orders, Remotely Created Checks, or ACH Debits.

12.      **"Person"** means any natural person or any entity, corporation, partnership, or association of persons.

13.      **"Receivership Defendants"** means Ambrosia Web Design LLC, d/b/a AWD; AFB LLC; CAM Services Direct LLC; Concord Financial Advisors LLC; Western GPS LLC; and MAX Direct LLC.

14.      **"Remotely created check"** means a check that is not created by the paying bank and that does not bear a signature applied, or purported to be applied, by the person on whose financial account the check is drawn.  A remotely created check is often referred to as a "demand draft," "bank draft," "bank check," or "pre-authorized draft."  A remotely created check originates as a paper-based transaction, but can be processed subsequently through electronic means (such as through check imaging or scanning) or through non-electronic means.

15.      **"Remotely created payment order"** means a payment instruction or order drawn on a person's financial account that is initiated or created by the payee and that does not bear a signature applied, or purported to be applied, by the person on whose financial account the order is drawn, and which is deposited into or cleared through the check clearing system.  A remotely created payment order originates as a non-paper-based transaction created when a seller, merchant, payment processor, or other entity enters financial account and routing numbers into an electronic check template that is converted into an electronic file for deposit into the check clearing system.

16.      **"Telemarketer"** means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.

17.     **"Telemarketing"** means a plan, program, or campaign which is conducted to induce the purchase of goods or services, or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call.

## ORDER

## I.     BAN ON ROBOCALLING

**IT IS THEREFORE ORDERED** that  Defendants are permanently restrained and enjoined from initiating, or causing others to initiate, any telephone call that delivers a prerecorded message, whether acting directly or through an intermediary.

## II.     BAN ON OUTBOUND TELEMARKETING CALLS

**IT IS FURTHER ORDERED** that Defendants are permanently restrained and enjoined from initiating, or causing others to initiate, any outbound telemarketing call, whether acting directly or through an intermediary; provided, however, that this Section shall not prohibit the Individual Defendants from initiating telephone calls:

A.     in which the sale of goods or services or charitable solicitation is not completed, and payment or authorization of payment is not required, until after a face-to-face sales or donation presentation by the seller or charitable organization; and

B.     to a business for the purpose of inducing or inquiring about the purchase of goods or services by the business or a charitable contribution by the business; provided, however, that Individual Defendants shall not initiate, or cause others to initiate, such calls for the purpose of inducing the retail sale of nondurable office or cleaning supplies.

## III.     BAN ON CERTAIN PAYMENT PROCESSING ACTIVITIES AND PAYMENT METHODS

**IT IS FURTHER ORDERED** that Defendants are permanently restrained and enjoined from:

A.     Payment Processing, whether directly or through an intermediary, in connection with ACH Debits, Remotely Created Checks, Remotely Created Payment Orders, or Card-Not-Present transactions; or

7

B.     accepting,  directly or indirectly, ACH Debits, Remotely Created Checks, Remotely Created Payment Orders, or Card-Not-Present transactions as payment for goods or services.

## IV.   BAN ON DEBT RELIEF PRODUCTS OR SERVICES

**IT IS FURTHER ORDERED** that Defendants are permanently restrained and enjoined from advertising, marketing, promoting, or offering for sale, or assisting in the advertising, marketing, promoting, or offering for sale of, any debt relief product or service.

## V.   BAN ON CREDIT REPAIR

**IT IS FURTHER ORDERED** that Defendants are permanently restrained and enjoined from advertising, marketing, promoting, or offering for sale, or assisting in the advertising, marketing, promoting, or offering for sale of, any credit repair service.

## VI.   PROHIBITION OF PRACTICES RELATING TO FINANCIAL RELATED PRODUCTS OR SERVICES

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with advertising, marketing, promoting, or offering for sale any financial related product or service, are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

A.     the terms or rates that are available for any loan or other extension of credit, including, but not limited to:

1.     closing costs or other fees;

2.     the payment schedule, the monthly payment amount(s), or other payment terms, or whether there is a balloon payment; interest rate(s), annual percentage rate(s), or finance charge(s); the loan amount, the amount of credit, the draw amount, or outstanding balance; the loan term, the draw period, or maturity; or any other term of credit;

3.      the savings associated with the credit;

4.      the amount of cash to be disbursed to the borrower out of the proceeds, or the amount of cash to be disbursed on behalf of the borrower to any third party;

5.      whether the payment of the minimum amount specified each month covers both interest and principal, and whether the credit has or can result in negative amortization;

6.      that the credit does not have a prepayment penalty or that no prepayment penalty and/or other fees or costs will be incurred if the consumer subsequently refinances; or

7.      that the interest rate(s) or annual percentage rate(s) are fixed rather than adjustable or adjustable rather than fixed;

B.      any aspect of any mortgage loan modification service or foreclosure relief service, including, but not limited to, the amount of savings or reduction in interest rate, loan principal, or monthly payment that a consumer will receive from purchasing, using, or enrolling in such mortgage loan modification service or foreclosure relief service; the amount of time before a consumer will receive a mortgage loan modification or relief from foreclosure; the likelihood that a consumer will obtain a modified mortgage loan or relief from foreclosure; or the reduction or cessation of collection calls;

C.      that a consumer will receive legal representation; or

D.      any other fact material to consumers concerning a financial related product or service.

## VII.   PROHIBITIONS REGARDING TELEMARKETING

**IT IS FURTHER ORDERED** that Defendants, their members, officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or indirectly, in connection

with the telemarketing of goods and services, are permanently restrained and enjoined from:

A.     failing to disclose to consumers that Defendants have a policy of not making refunds or allowing cancellations, if this is Defendants' policy;

B.     requesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit, when Defendants have guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a consumer;

C.     causing billing information to be submitted for payment without the express informed consent of the consumer; and

D.     engaging in, or causing a telemarketer to engage in, initiating an outbound telemarketing call to a person's telephone number that is on the National Do Not Call Registry, unless the Defendants have:

1.     obtained an express agreement, in writing, from such person, that clearly evidences the person's authorization that calls made by or on behalf of Defendants may be placed to that person, and that includes the telephone number to which the calls may be placed and the signature of the person; or

2.     an established business relationship with such person, and that person has not stated that he or she does not wish to receive outbound telephone calls made by or on behalf of Defendants.

## VIII.  PROHIBITION OF PRACTICES RELATING TO ANY PRODUCTS OR SERVICES

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with advertising, marketing, promoting, or offering for sale any

product or service, are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

      A.     any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including, but not limited to, the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;

      B.     that any person is affiliated with, endorsed or approved by, or otherwise connected to any other person, government entity, or public, non-profit, or other non-commercial program, or any other program;

      C.     the total costs to purchase, receive, or use, or the quantity of, the product or service;

      D.     any material restriction, limitation, or condition on purchasing, receiving, or using the product or service; or

      E.     any other fact material to consumers concerning any product or service, such as:  any material aspect of its performance, efficacy, nature, or central characteristics.

## IX.    REQUIRED SUBSTANTIATION FOR BENEFIT, PERFORMANCE, AND EFFICACY CLAIMS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with advertising, marketing, promoting, or offering for sale, of any product or service, are permanently restrained and enjoined from making or assisting others in making any representation, expressly or by implication, about the benefits, performance, or efficacy of the product or service, unless the representation is non-misleading, and, at the time the representation is made, Defendants possess and rely upon competent and reliable evidence to substantiate that the representation is true.

11

X.      **MONETARY JUDGMENT**

**IT IS FURTHER ORDERED** that:

A.      Judgment in the amount of EIGHT MILLION THREE HUNDRED THOUSAND DOLLARS ($8,300,000) is entered in favor of the Commission against Defendants, jointly and severally, as equitable monetary relief.

B.      Defendant LeRoy Castine is ordered to immediately sell his Bulgari watch (Model TI 44 TA #L3831) for not less than fair market value, or for an amount approved by counsel for Plaintiff, to a third-party buyer.  Within 3 business days of receipt of the net proceeds from the sale of the watch, Defendant Castine shall remit the net proceeds of the sale, less any costs for sales commission or advertising, to the Commission in the form of an electronic funds transfer or certified or cashier's check made payable to the Commission or an agent as the Commission may direct, and provide a copy of the bill of sale and evidence of the sales commission or advertising costs.

C.      Within 10 days of the entry of this Order, Defendant LeRoy Castine shall transfer to the Receiver dominion, control, and legal and equitable title to the following personal property formerly located at 123 East Baseline Road, Tempe, Arizona and now in the possession of the Receiver:

1.      "The Ballparks of Major League Baseball" map with dirt samples from various major league ballparks;

2.      Autographed sports photographs of Michael Jordan, Scottie Pippen, Dennis Rodman, Brian Urlacher, Ernie Banks, Randy Johnson, Curt Schilling, Nolan Ryan, Magic Johnson, Dick Butkus, Gale Sayers, George Halas, Walter Payton, and Lawrence Taylor;

3.      John Wooden "Pyramid of Success"; and

4.      UCLA basketball commemorative plaque.

Defendant LeRoy Castine shall cooperate fully with the Receiver and take such other steps as the Receiver may require to transfer all dominion, control, and legal and equitable title to all property transferred, including executing any documents and

providing any necessary information.  Upon completion of the transfer, the property shall be treated as an asset of the Receivership Defendants for the purposes of this Order, and shall be liquidated in accordance with Section XIII below.

D.   Defendant Chris Ambrosia is ordered to immediately liquidate the TD Ameritrade account (account number xxx-xx3451) held by Max Direct LLC for fair market value.  Within 3 business days of receipt of the net proceeds from the liquidation of this account, Defendant Chris Ambrosia shall remit the net proceeds of the liquidation, less applicable brokerage fees, to the Commission in the form of an electronic funds transfers or certified or cashier's check made payable to the Commission or an agent as the Commission may direct.

E.   Upon the payments or transfers set forth in Subsections B, C, and D above, the remainder of the judgment is suspended, subject to the Subsections below.

F.   The Commission's agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' sworn financial statements and related documents (collectively, Financial Attestations) submitted to the Commission, namely:

1.   the Financial Statement of Individual Defendant LeRoy Castine signed on October 31, 2012;

2.   the Declaration of LeRoy Castine signed on May 7, 2013;

3.   the Financial Statement of Individual Defendant Chris Ambrosia signed on October 31, 2012; and

4.   the Declaration of Chris Ambrosia signed on May 7, 2013.

G.   The suspension of the judgment will be lifted as to any Defendant if, upon motion by the Commission, the Court finds that Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the Financial Attestations identified above.

H.   If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Defendant in the amount specified in Subsection A above

13

(which the parties stipulate only for purposes of this Section represents the consumer injury or unjust enrichment alleged in the Amended Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

I.      Defendants relinquish dominion and all legal and equitable right, title, and interest in assets transferred under this Order and may not seek the return of any assets.

J.      The facts alleged in the Amended Complaint will be taken as true, without further proof, in any civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment under this Order, such as a nondischargeability complaint in any bankruptcy case.

K.      The facts alleged in the Amended Complaint establish all elements necessary to sustain an action by the Commission under Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and that this Order shall have collateral estoppel effect for such purposes.

L.      Defendants acknowledge that their taxpayer identifying numbers (Social Security Numbers or Employer Identification Numbers) that Defendants previously submitted to the Commission may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

M.      All money paid to the Commission under this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Amended Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.  Defendants have no right to challenge any actions the Commission or its representatives may take under this Subsection.

14

N.      The asset freeze imposed by the Preliminary Injunction entered on March 7, 2013 is modified to permit the payments and transfers required by this Order.  The asset freeze on the assets of the Receivership Defendants shall remain in effect until the Receiver completes all duties, is paid all Court-approved fees and expenses, and is discharged under the Section titled "Receivership Termination."  The asset freeze on the assets of Individual Defendants shall remain in effect against each Individual Defendant until that Individual Defendant has fully complied with the requirements of this Section. A financial institution may rely on a letter from the Commission stating that an asset freeze on an Individual Defendant has been lifted.

O.      To ensure the Order effectuates disgorgement, Defendants must not, directly or indirectly, take any deduction, capital loss, or other tax benefit on any federal or state tax return for any asset transfer made to the Commission related to this Order. Within 14 days of receipt of a written request from a representative of the Commission, Defendants must take all necessary steps (such as filing a completed IRS Form 4506 or 8821) to cause the Internal Revenue Service or other tax authority to provide information to the Commission.  The Commission may request any information, including amended tax returns and any other filings related to compliance with this provision, that Defendants have the authority to release.

## XI.    CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.      failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress.  If a representative of the Commission requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission, within 14 days;

B.      disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, Social Security Number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with marketing or selling or assisting others in marketing or selling any debt relief product or service or financial related product or service; and

C.      failing to destroy the customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Commission.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

## XII.   COOPERATION

**IT IS FURTHER ORDERED** that Defendants must fully cooperate with representatives of the Commission in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Amended Complaint.  Defendants must provide truthful and complete information, evidence, and testimony.  Individual Defendants must appear, and Corporate Defendants must cause Corporate Defendants' officers, employees, representatives, or agents to appear, for interviews, discovery, hearings, trials, and any other proceedings that a Commission representative may reasonably request upon 5 days written notice, or other reasonable notice, at such places and times as a Commission representative may designate, without the service of a subpoena.

## XIII.  RECEIVERSHIP TERMINATION

**IT IS FURTHER ORDERED** that the appointment of Thomas W. McNamara as Receiver over the Receivership Defendants under Section XV of the Preliminary Injunction entered on March 7, 2013, and related provisions set forth in Sections XVI,

XVII, XVIII, XIX, XXI, XXII, XXIII, and XXIV of the Preliminary Injunction, are continued in full force and effect except as modified by this Section.

      A.    The Receiver is directed and authorized to accomplish the following:

      1.    complete, as necessary, the liquidation of the assets of the Receivership Defendants;

      2.    prepare and file with the Court a final report describing the Receiver's activities under this Order and the Preliminary Injunction, and a final application for compensation and expenses; and

      3.    upon the Court's approval of the Receiver's final application for compensation and expenses, distribute to the Commission any remaining assets at the conclusion of the Receiver's duties.

      B.    The Receiver must complete all duties within 120 days after the entry of this Order, but any party or the Receiver may request that the Court extend the Receiver's term for good cause.  Upon completion of the above tasks, the duties of the Receivership shall terminate, and the Receiver shall be discharged.

## XIV.  ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

      A.    Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

      B.    For 10 years after entry of this Order, each Individual Defendant for any business that the Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and each Corporate Defendant, must deliver a copy of this Order to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery

must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.    For ten (10) years after entry of this Order, Defendants must deliver a copy of this Order to all Payment Processors with which they established a merchant account.

D.    From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XV.    COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the Commission:

A.    One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1.    Each Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the products and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained under this Order, unless previously submitted to the Commission.

2.    Additionally, each Individual Defendant must:  (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such

Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.     For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.     Each Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.     Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.     Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission under this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for

19

Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.  The subject line must begin:  *FTC v. Ambrosia Web Design* (X130003).

## XVI.  RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendants must create certain records for 10 years after entry of the Order, and retain each record for 5 years.  Specifically, Corporate Defendants and each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.      accounting records showing the revenues from all goods or services sold;

B.      personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.      all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.      a copy of each unique advertisement or other marketing material.

## XVII. COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order and any failure to transfer any assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission, each Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures

20

prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

      B.     For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant.  Each Defendant must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

      C.     The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process under Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

**IT IS SO ORDERED.**

      Dated this 4th day of September, 2013.

*Frederick J. Martone*

Frederick J. Martone
Senior United States District Judge

1

**SO STIPULATED AND AGREED:**

2

**FOR PLAINTIFF:**
**FEDERAL TRADE COMMISSION**

3

4
　　　　　　　　　　　　　　　　　　　　　　　Date: _8/28/13_

5
**JASON C. MOON, Tex. Bar No. 24001188**

6
**ANNE D. LEJEUNE, Tex. Bar No. 24054286**
**THOMAS B. CARTER, Tex. Bar No. 03932300**

7
**EMILY B. ROBINSON, Tex. Bar No. 24046737**

8
**Federal Trade Commission**
**1999 Bryan Street, Suite 2150**

9
**Dallas, Texas 75201**

10
**(214) 979-9378; jmoon@ftc.gov (Moon)**
**(214) 979-9371; alejeune@ftc.gov (LeJeune)**

11
**(214) 979-9372; tcarter@ftc.gov (Carter)**

12
**(214) 979-9386; erobinson@ftc.gov (Robinson)**
**(214) 953-3079 (Fax)**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   FOR DEFENDANTS WESTERN GPS LLC,
    AFB LLC, CONCORD FINANCIAL
2   ADVISORS LLC, AMBROSIA WEB
    DESIGN LLC, CAM SERVICES DIRECT LLC,
3   LEROY CASTINE, AND CHRIS AMBROSIA

4
                                                Date: 8/6/13
5   _____ for
    BRIAN J. FOSTER
6   SNELL & WILMER L.L.P.
    ONE ARIZONA CENTER
7   PHOENIX, AZ 85004-2202
    (602) 382-6242
8   (602) 382-6070 (Fax)
    bfoster@swlaw.com
9   COUNSEL FOR WESTERN GPS LLC,
    AFB LLC, CONCORD FINANCIAL
10  ADVISORS LLC, AMBROSIA WEB
    DESIGN LLC, CAM SERVICES DIRECT LLC,
11  LEROY CASTINE, AND CHRIS AMBROSIA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                          22

**DEFENDANTS:**

1

**WESTERN GPS LLC**

2

3

Date: 7/31/13

4  **By: LEROY CASTINE, MANAGING MEMBER**
5  **OF WESTERN GPS LLC**

6  **AFB LLC**

7

Date: 7/31/13

8  **By: LEROY CASTINE, MANAGING MEMBER**
9  **OF AFB LLC**

10 **CONCORD FINANCIAL ADVISORS LLC**

11

12

Date: 7/31/13

**By: LEROY CASTINE, MANAGING MEMBER**
13 **OF CONCORD FINANCIAL ADVISORS LLC**

14

15

Date: 7/31/13

16 **LEROY CASTINE, INDIVIDUALLY, AND AS**
17 **MANAGING MEMBER OF WESTERN GPS LLC,**
   **AFB LLC, AND CONCORD FINANCIAL ADVISORS LLC**

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AMBROSIA WEB DESIGN LLC**

*chris ambrosia*                        Date:  8/6/13

**By: CHRIS AMBROSIA, MANAGING MEMBER
OF AMBROSIA WEB DESIGN LLC**


**CAM SERVICES DIRECT LLC**

*chris ambrosia*                        Date:  8/6/13

**By: CHRIS AMBROSIA, MANAGING MEMBER
OF CAM SERVICES DIRECT LLC**


*chris ambrosia*                        Date:  8/6/13

**CHRIS AMBROSIA, INDIVIDUALLY, AND AS
MANAGING MEMBER OF AMBROSIA WEB
DESIGN LLC AND CAM SERVICES DIRECT LLC**

24